# McAllister v. Pittsburgh Water Heater Co., Appellant.

*Master and servant—Corporations—Employment of salesman—By-laws.*

Where the by-laws of a corporation give to the directors of a company the power to appoint clerks, agents and servants, and direct that the president shall have the general control and management of the business and affairs, but gives no power to the secretary to appoint agents, a person who corresponds with the secretary of the company and claims that as a result of such correspondence the company has contracted to employ him as a salesman for a definite period, cannot maintain an action against the company for salary where it appears that the action of the secretary had not been confirmed by the directors or president, and that the plaintiff had in fact rendered no services inasmuch as the company had not permitted him to enter upon his employment.

The by-law of a corporation upon its adoption becomes written into the charter, and puts parties who deal with the corporation upon notice in trading with the officers of the corporation as to the extent of the power and agency of such officers, and this whether the specific by-law has been brought home to them or not.

Argued Oct. 17, 1916. Appeal, No. 83, Oct. T., 1916, by defendant, from judgment of C. P. No. 1, Philadelphia Co., Sept. T., 1913, No. 2, on verdict for plaintiff in case of Theodore R. McAllister v. Pittsburgh Water Heater Co. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Assumpsit to recover salary as a salesman. Before BREGY, P. J.

At the trial it appeared that the plaintiff claimed to recover salary at the rate of $83.33 per month for three months from June to September, 1912, and at the rate of $100 per month for four months from September, 1912, to January 1, 1913, and also expenses at the rate of $2 per day for a certain period. The alleged contract of em-

ployment was made with the secretary of the defendant company.

The by-laws gave the directors power "to appoint, and at their discretion remove or suspend such managers, officers, subordinate, assistant or otherwise, and clerks, agents and servants, permanently or temporarily as they may from time to time think fit, and to determine their duties and fix, and from time to time change, their salaries or emoluments, and to require security in such instances and in such amount as they think fit."

The president's powers were, inter alia, as follows:

"The President shall be the chief executive officer and the head of the company, and (in the recess of the Board of Directors and of the Executive Committee), shall have the general control and management of its business and affairs, subject, however, to the right of the directors to delegate any specific power, except such as may be by the statute exclusively conferred upon the president, to any other officer or officers of the company, to the exclusion for the time being of the president."

The contract was not ratified by either the directors or the president, and the plaintiff did not in fact enter upon his employment. Other facts appear by the opinion of the Superior Court.

The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $975. Defendant appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*W. Logan MacCoy,* of *MacCoy, Evans, Hutchinson & Lewis,* with him *J. Merrill Wright,* for appellant.—A secretary of a corporation, as such, has no authority to employ salesmen: Greene v. Iroquois Hotel Co., 84 N. Y. Sup. 591; Millward-Cliff Cracker Co.'s Est., 161 Pa. 157; DeForest v. Northwest Townsite Co., 241 Pa. 78.

*E. Spencer Miller,* for appellee.—The contract was binding on the defendant company: Manhattan Hardware Co. v. Phalen, 128 Pa. 110; Birkle v. Coleman, 50 Pa. Superior Ct. 105; Miller v. Pollock, 99 Pa. 202; Lonzer v. Lehigh Valley R. R. Co., 196 Pa. 610; Dougherty v. Welshans, 233 Pa. 121; Knupp v. Brooks, 200 Pa. 494; Lerch v. Hershey Transit Co., 246 Pa. 473; Timlin v. American Patriots, 249 Pa. 465; Macneir v. Wallace, 252 Pa. 323; Catasauqua Nat. Bank v. Miller, 60 Pa. Superior Ct. 220.

OPINION BY ORLADY, P. J., March 9, 1917:

The court below gave binding instructions to find for the plaintiff. This conclusion was reached in interpreting certain correspondence between the plaintiff and the defendant, regarding the prospective employment of the plaintiff as a salesman. The original suggestion is contained in a letter of May 10, 1912, directed to the president of the company, at Pittsburgh, signed by the plaintiff, with his home address in Philadelphia. This was answered May 14, 1912, and was signed with the corporate name of the defendant, and by "C. A. Detweiler, Secretary," the important parts of which are as follows: "Your application for a position in our sales department has been received and carefully noted; if you will give us some idea as to salary and arrangements for compensation you would want, also the matter of expenses or the amount of fixed allowance for expenses, it would have bearing on the case," to which the plaintiff replied May 16, 1912, "Your letter in the position you have open is very interesting to me"......"As regarding salary I will be willing to sign up with you for one year at fifteen hundred dollars, and a commission on all over sales, as I presume you have a fixed amount of sales for which you would base my salary and travelling expenses." This definite and specific proffer on the part of the plaintiff was replied to on May 21, 1912, by C. A. Detweiler, secretary, stating, "It is never our policy to enter into a con-

tract until after a three or six months trial had demonstrated to us that the salesman is capable of delivering the goods, and under the circumstances we are willing to tender you a proposition of employment up until January 1, 1913, without contract, on a basis of a salary of $83.33 per month for the first three months, and after that period at the rate of $100 per month until January 1, 1913......If such a proposition would be satisfactory to you, will you please advise us to that effect, and we shall go into the matter further, so that your employment will commence June 1st." The plaintiff, two days later replied, "Will say that I have confidence enough in your line and myself to accept your position. I feel assured at the end of three to six months my sales will warrant an increase in salary, therefore I wait your further instructions as I am anxious to get on the job." This letter was followed by one of June 4th, in which the plaintiff addressed the secretary of the company: "Since accepting your proposition to me, under date of 5 month, 23, I have been expecting to receive instructions. Please advise me at once." Two days later the defendant company wrote as follows: "The policy of the company has always been to look a man over before giving him a contract,......in the meantime the season is advancing so far that we doubt that any advantageous showing could be made at this time, and we are accordingly filing your application for attention at a later date. We will apprise you when the matter will be opened for further negotiations."

The plaintiff brought suit to recover the salary for seven months, and the court directed the jury to render a verdict in plaintiff's favor with interest, crediting some earnings of the plaintiff in other employment.

While the correspondence of the plaintiff was originally directed to the president of the company, the replies all came from the secretary, and there was no proof adduced, from which it can reasonably be inferred, that

the secretary of this corporation was such an officer as was authorized to employ salesmen.

Taking the most liberal view of this correspondence, the plaintiff was never employed by the president, or any officer of the corporation authorized to engage his services; the secretary had no authority to make such a contract, and there is no definite or certain acceptance of the plaintiff's offer. The defendant, as had been its custom to "look over a man before giving him a contract," filed the application for attention at a later date. The authority to make such a contract was clearly defined in the by-laws of the corporation. While there was a proffer made by the plaintiff, there was no definite acceptance by the defendant. The correspondence began May 10, 1912, and after an interchange of nine letters within thirty days, they were to go into the matter further when the plaintiff was to be notified, and he would be apprised when the matter would be open for further negotiations. The letter of the secretary may have been misleading, but before the plaintiff can hold the defendant liable he is obliged to show that the act of the secretary was approved by proper authority. The fact that the correspondence in the first instance was directed to the president, and replied to by the secretary should have put him on inquiry as to the authority of the officer with whom he was seeking to make a contract.

With the direct denial by the president that he ever delegated his authority to the secretary to employ the plaintiff, in the absence of other affirmative proof to establish such authority the court should have affirmed the defendant's point, and instructed the jury to return a verdict in defendant's favor: Corr v. Greenfield, 134 Pa. 503; Beeman v. Supreme Lodge, 215 Pa. 627; De Forest v. Townsite Co., 241 Pa. 78. The by-law of a corporation upon its adoption, becomes written into the charter, and puts parties who deal with the corporation upon notice in trading with the officers of the corporation as to the extent of the power and agency of such officers, and

this whether the specific by-law has been brought home to them or not: Worthington v. Schuylkill Elec. Ry. Co., 195 Pa. 211.

The judgment is reversed.